IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:16-CR-30-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| DONOVAN DAVE DIXON, | ) | |
| | ) | |
| Defendant. | ) | |

On July 29, 2024, Donovan Dave Dixon ("Dixon" or "defendant"), proceeding pro se, moved for a sentence reduction under 18 U.S.C. § 3582(c)(2) and Amendment 821 of the United States Sentencing Guidelines ("Amendment 821") [D.E. 683]. On July 31, 2024, the court appointed the Office of the Federal Public Defender for the Eastern District of North Carolina to represent Dixon [D.E. 684]. On September 16, 2024, Dixon asked the court to vacate his convictions [D.E. 685]. On January 28, 2025, Dixon again asked the court to vacate his convictions [D.E. 698]. On January 30, 2025, Dixon, through counsel, again asked the court to reduce his sentence [D.E. 694] and filed an exhibit in support [D.E. 695]. On January 31, 2025, probation filed a report concerning Dixon's motions for a sentence reduction [D.E. 697]. In that report, the United States opposed reducing Dixon's sentence [D.E. 697-1], and Dixon asked the court to reduce his sentence from 240 months to 192 months [D.E. 697-2]. As explained below, the court denies Dixon's motions for a sentence reduction and dismisses without prejudice Dixon's motions to vacate his convictions.

I.

On April 16, 2018, after a four-day trial, a jury in the Eastern District of North Carolina found Dixon guilty of conspiracy to unlawfully dispense and distribute Oxycodone,

Oxymorphone, Methadone, and Alprazolam ("count one") and twenty counts of unlawful dispensation and distribution of Oxycodone ("counts two through twenty-one"). See [D.E. 406, 485–88]. On August 27, 2018, the court held Dixon's sentencing hearing. See [D.E. 442]; Sent. Tr. [D.E. 489-1] 2. At the sentencing hearing, the court adopted the facts set forth in the Presentence Investigation Report ("PSR"). See Sent. Tr. 4; PSR [D.E. 435]; Fed. R. Crim. P. 32(i)(3)(A)-(B). After receiving evidence and argument from Dixon and the United States, the court overruled Dixon's objections to the PSR. See Sent. Tr. 4–35. The court calculated Dixon's total offense level to be 38, his criminal history category to be I, and his advisory guidelines range to be 235 to 293 months. See Sent. Tr. 35–36. After thoroughly considering all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Dixon to 240 months' concurrent imprisonment on counts one through twenty-one. See Sent. Tr. 36–52. On August 30, 2018, Dixon appealed. See [D.E. 445]. On December 20, 2019, the United States Court of Appeals for the Fourth Circuit affirmed Dixon's convictions and sentence. See [D.E. 498, 499].

On April 30, 2021, Dixon, proceeding pro se, petitioned under 28 U.S.C. § 2255 ("section 2255") to vacate, set aside, or correct his 240-month sentence. See [D.E. 561]. On September 21, 2021, the United States moved to dismiss Dixon's petition for failure to state a claim and filed a memorandum in support. See [D.E. 577, 578]. The same day, the court notified Dixon of the motion to dismiss, the consequences of failing to respond, and the response deadline. See [D.E. 579]. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam). On April 14, 2022, the court granted the United States' motion and dismissed Dixon's section 2255 petition. See [D.E. 595, 596]. Dixon did not appeal.

II.

Under 18 U.S.C. § 3582(c)(2), a court may reduce a defendant's term of imprisonment if

2

the defendant has been "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered" by changes to the United States Sentencing Guidelines. 18 U.S.C. § 3582(c)(2); see United States v. Barrett, 133 F.4th 280, 282–83 (4th Cir. 2025); United States v. Martin, 916 F.3d 389, 395 (4th Cir. 2019); United States v. Williams, 808 F.3d 253, 257–58 (4th Cir. 2015). A sentence reduction under 18 U.S.C. § 3582(c)(2) must comport with the 18 U.S.C. § 3553(a) factors and applicable Sentencing Commission policy statements. See 18 U.S.C. § 3582(c)(2); Williams, 808 F.3d at 257. The Sentencing Commission policy statement in U.S.S.G. § 1B1.10 applies to section 3582(c)(2) proceedings. See Dillon v. United States, 560 U.S. 817, 819, 821 (2010); Martin, 916 F.3d at 396; Williams, 808 F.3d at 258.

The sentencing court follows a two-step inquiry when reviewing motions for sentence reductions under section 3582(c)(2). See Dillon, 560 U.S. at 826–27; Martin, 916 F.3d at 396; Williams, 808 F.3d at 258. First, the sentencing court must review the Sentencing Commission's instructions in U.S.S.G. § 1B1.10 "to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." Williams, 808 F.3d at 257–58 (quotation and emphasis omitted). At this step, section 1B1.10 requires the court to begin by "determining the amended guideline range that would have been applicable to the defendant had the relevant amendment been in effect at the time of the initial sentencing." Dillon, 560 U.S. at 827 (cleaned up). If the court determines that the defendant is eligible for a sentence reduction, "the court moves to the second step and determines the extent of the reduction." Williams, 808 F.3d at 258. At step two, section 3582(c)(2) "instructs a court to consider any applicable [section] 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case." Dillon, 560 U.S. at 827; see, e.g., United States v. Navarro-Melendez, No. 1:18-CR-

3

91, 2024 WL 1722524, at *1 (W.D.N.C. Apr. 22, 2024) (unpublished); United States v. Pledger, No. 2:12-CR-23, 2017 WL 3495723, at *1–2 (E.D.N.C. Aug. 14, 2017) (unpublished).

In evaluating the section 3553(a) factors, the court considers, inter alia, the nature and circumstances of the offense, the history and characteristics of the defendant, a defendant's post-sentencing conduct, the need to deter criminal behavior, the need to promote respect for the law, and the need to protect the public. See 18 U.S.C. § 3553(a); Chavez-Meza v. United States, 585 U.S. 109, 115–20 (2018); Pepper v. United States, 562 U.S. 476, 480–81, 490 (2011); United States v. Davis, 99 F.4th 647, 659 (4th Cir. 2024); United States v. Smith, 75 F.4th 459, 464–66 (4th Cir. 2023); United States v. High, 997 F.3d 181, 187–91 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 329–30 (4th Cir. 2021) (per curiam); United States v. McDonald, 986 F.3d 402, 410–12 (4th Cir. 2021); Martin, 916 F.3d at 395–98.

Dixon moves for a sentence reduction based on Amendment 821 Part B. See [D.E. 683] 1–4; [D.E. 694] 1; [D.E. 697-2]. Amendment 821 Part B, which became effective on November 1, 2023, amended Chapter Four of the Sentencing Guidelines by inserting at the end a new Part C. See U.S.S.G. app. C, amend. 821. Section 4C1.1, Adjustment for Certain Zero-Point Offenders, decreases a defendant's offense level by two levels if the defendant did not receive any criminal history points and his offense of conviction did not include any listed aggravating factors. See id. § 4C1.1. Section 1B1.10 authorizes a court to reduce a defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) using Amendment 821. See id. § 1B1.10(d); Barrett, 133 F.4th at 282–83.

At step one, the court calculates Dixon's new advisory guideline range to be 188 to 235 months' imprisonment based on a total offense level 36 and a criminal history category I. See [D.E. 697] 1. At step two, the court has completely reviewed the entire record, the parties' arguments, the new advisory guideline range, and all relevant factors under 18 U.S.C. § 3553(a).

4

See Chavez-Meza, 585 U.S. at 117–20; Pepper, 562 U.S. at 490–93; Davis, 99 F.4th at 659; Smith, 75 F.4th at 464–66; United States v. Troy, 64 F.4th 177, 184 (4th Cir. 2023); United States v. Swain, 49 F.4th 398, 402 (4th Cir. 2022); United States v. Chambers, 956 F.3d 667, 671–75 (4th Cir. 2020), abrogated on other grounds by Concepcion v. United States, 597 U.S. 481 (2022); United States v. May, 783 F. App'x 309, 310 (4th Cir. 2019) (per curiam) (unpublished).

The section 3553(a) factors counsel against reducing Dixon's sentence. Dixon is 59 years old and engaged in brazen criminal behavior. See PSR ¶¶ 11–30. In 1998, Dixon received his medical degree. See id. at ¶ 11. In 2010, the North Carolina Medical Board ("NCMB") licensed Dixon to practice medicine in North Carolina. See id. On March 15, 2011, Dixon opened a pain management clinic in Pembroke, North Carolina. See id. Dixon never interacted with many of his "patients." See id. Dixon exchanged Oxycodone prescriptions for cash. See id. at ¶ 13. Sometimes he provided a cursory examination. See id. Sometimes he did not. See id. Dixon also provided fraudulent Oxycodone prescriptions to Anthony Andrews ("Andrews"), a known drug dealer. See id. at ¶ 14. Andrews systematically procured Oxycodone pills through Dixon and sold them on the black market for "hundreds of thousands of dollars." Id. In return, Andrews paid Dixon $6,000 to $8,000 per week. See id. at ¶ 25. Dixon issued 750 fraudulent prescriptions for thousands of Oxycodone pills to opioid addicts and drug trafficking strawmen. See id. at ¶ 18. Dixon's conduct fell far "outside of legitimate medical practice." Sent Tr. 45; see PSR ¶ 13. During Dixon's scheme, he repeatedly provided fraudulent information, medical records, and patient charts to the NCMB. See PSR ¶¶ 26–28. Through his fraud, Dixon quickly became one of the top Oxycodone prescribers in North Carolina. See id. at ¶ 12. In total, Dixon fraudulently prescribed 2.6 kilograms of Oxycodone, 75 grams of Oxymorphone, 55.8 grams of methadone, 1.2 grams of amphetamine, and 0.9 grams of Hydrocodone. See id. at ¶ 18. The estimated street

5

value of Dixon's fraudulently prescribed pills exceeds $2,000,000. See id. at ¶ 12.

Dixon cites some positive steps he has taken while federally incarcerated, such as participating in educational programming, maintaining work assignments, and making payments towards his special assessment. See [D.E. 697-2] 1; [D.E. 697-3] 1-27; [D.E. 695] 1–4; cf. Pepper, 562 U.S. at 491–92. Dixon, however, committed three infractions while in federal custody (1) possessing a hazardous tool in 2019, (2) possessing a hazardous tool in 2021, and (3) being in an unauthorized area in 2024. See [D.E. 697] 1; [D.E. 697-3] 15–17.

The court has considered the entire record and all relevant policy statements. See Concepcion, 597 U.S. at 494–95 & n.4; Pepper, 562 U.S. at 490; Davis, 99 F.4th at 659; Smith, 75 F.4th at 466–69; High, 997 F.3d at 187–91; McDonald, 986 F.3d at 410–12; Martin, 916 F.3d at 398. Dixon abused his position of trust as a physician and flooded North Carolina with fraudulently obtained Oxycodone pills. Moreover, Dixon committed three infractions while in federal custody. Dixon's appalling criminal conduct and his infractions while federally incarcerated demonstrate his disrespect for the law. The court has balanced Dixon's rehabilitation efforts while federally incarcerated with his serious criminal conduct, his serious misconduct in federal prison, the need to punish him, the need to promote respect for the law, the need to protect society, and the need to deter others. See Concepcion, 597 U.S. at 496–502; Pepper, 562 U.S. at 480–81; Davis, 99 F.4th at 659; Smith, 75 F.4th at 466–69; High, 997 F.3d at 187–91; McDonald, 986 F.3d at 412; Martin, 916 F.3d at 398. Having considered the entire record, the section 3553(a) factors, the parties' arguments, the need to punish Dixon for his serious criminal behavior, to incapacitate. Dixon, to promote respect for the law, to deter others, and to protect society, the court denies Dixon's motions for a sentence reduction See, e.g., Concepcion, 597 U.S. at 496–502; Chavez-Meza, 585 U.S. at 117–20; Pepper, 562 U.S. at 480–81; Davis, 99 F.4th at 659; Smith, 75

6

F.4th at 466–69; High, 997 F.3d at 187–91; Kibble, 992 F.3d at 331–32; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020). Even if the court miscalculated the new advisory guideline range, the court would impose the same sentence as an alternative variant sentence in light of the entire record and the section 3553(a) factors. See 18 U.S.C. § 3553(a); United States v. Gomez-Jimenez, 750 F.3d 370, 382–86 (4th Cir. 2014); United States v. Hargrove, 701 F.3d 156, 161–65 (4th Cir. 2012).

## III.

Dixon seeks to vacate his convictions. See [D.E. 685] 1; [D.E. 698] 1–6. Dixon argues (1) that Controlled Substances Act, 21 U.S.C. §§ 801 et seq. ("CSA") offenses require specific intent under Ruan v. United States, 597 U.S. 450 (2022), (2) that the United States failed to prove the existence of a conspiracy, (3) that the court's jury instructions were deficient, and (4) criminal conspiracy law, as applied to the CSA, is impermissibly vague. See [D.E. 698] 1–6.

Dixon "attacks the substance of [his convictions] on the merits." United States v. McRae, 793 F.3d 392, 397 (4th Cir. 2015) (quotation omitted); see Gonzalez v. Crosby, 545 U.S. 524, 528–38 (2005); Bartko v. United States, No. 5:09-CR-321, 2020 WL 7081583, at *2 (E.D.N.C. Dec. 3, 2020) (unpublished), aff'd, No. 20-7879, 2022 WL 1599125 (4th Cir. May 20, 2022) (per curiam) (unpublished). Because Dixon's two motions seek to vacate his convictions, the court construes them as section 2255 petitions. See Crosby, 545 U.S. at 528–38; Bixby v. Stirling, 90 F.4th 140, 149–50 (4th Cir. 2024), cert. denied, 145 S. Ct. 224 (2024); McRae, 793 F.3d at 397; Bartko, 2020 WL 7081583, at *2; cf. Rivers v. Guerrero, 605 U.S. 443, 450–51 (2025). Dixon, however, already filed and lost under section 2255. See [D.E. 561, 595, 596, 674]. Moreover, Dixon "has not received authorization from the United States Court of Appeals for the Fourth Circuit" to file a second section 2255 petition. Lucas v. United States, No. 4:11-CR-71, 2021 WL 5810504, at *1

7

(E.D.N.C. Dec. 7, 2021) (unpublished). Thus, the court lacks jurisdiction to consider Dixon's motions. See, e.g., id.; 28 U.S.C. § 2255(h); Crosby, 545 U.S. at 528–38; Richardson v. Thomas, 930 F.3d 587, 595–600 (4th Cir. 2019); Moses v. Joyner, 815 F.3d 163, 167–69 (4th Cir. 2016); United States v. Winestock, 340 F.3d 200, 204–05 (4th Cir. 2003), abrogated in part by McRae, 793 F.3d 392. Accordingly, the court dismisses without prejudice Dixon's motions.

IV.

In sum, the court DENIES defendant's motions for a sentence reduction [D.E. 683, 694] and DISMISSES WITHOUT PREJUDICE defendant's motions to vacate his convictions [D.E. 685, 698]. The court also DENIES a certificate of appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

SO ORDERED. This 18 day of August, 2025.

JAMES C. DEVER III
United States District Judge